ZURICH INSURANCE COMPANY, as Subrogee of Jerome S. Patrick, Plaintiff-Appellant, v. AMCAST INDUSTRIAL CORPORATION, Defendant-Appellee.

First District (2nd Division)   No. 1—99—3404

Opinion filed December 19, 2000.

Kurt E. Gustafson, of Daar, Fisher, Kanaris & Vanek, P.C., of Chicago, for appellant.

Kathleen T. Zellner and Douglas H. Johnson, both of Kathleen T. Zellner & Associates, of Naperville, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Zurich Insurance Company (plaintiff or Zurich) appeals from the judgment of the circuit court of Cook County dismissing its lawsuit as subrogee of Jerome Patrick (the insured or Patrick) against Amcast Industrial Corporation (defendant or Amcast). On appeal, Zurich argues that the trial court erred in finding that its suit to recover for property damage is barred as *res judicata* due to an earlier suit by Patrick against Amcast for personal injury arising out of the same accident. We reverse.

The initial facts of this case from Zurich's complaint follow. Zurich is an insurance carrier that insured a truck owned by Patrick. On or about February 22, 1995, Patrick was driving his truck from Amcast's place of business in Wisconsin to Cicero, Illinois, hauling cargo which consisted of "baskets of aluminum casting." The cargo in the truck allegedly shifted during the trip due to Amcast's negligence in not securing it properly. As a result, Patrick lost control of his truck, which crashed and rolled over on its side. Zurich subsequently paid Patrick the sum of $21,653.75, for the damage to his truck, pursuant to its obligations under the insurance policy. Zurich then became subrogated to Patrick's right to recover against Amcast for the damage to Patrick's truck.

The procedural facts of this case are not in dispute. On January 6, 1999, Zurich filed a complaint against Amcast alleging that Amcast's negligence in failing to properly secure the cargo in Patrick's truck caused the weight of the cargo to shift during the trip and the truck to crash. Amcast filed a motion to dismiss pursuant to section 2—619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(4) (West 1998)), on May 14, 1999, arguing that the lawsuit was barred by *res judicata* due to an earlier lawsuit filed against Amcast by Patrick. This earlier lawsuit (the Du Page litigation) was filed in the circuit court of Du Page County on June 16, 1995, and was styled Jerome S. Patrick v. Amcast Industrial Corp., 96 AR 1718. In its response to the motion to dismiss, Zurich offered an affidavit of the attorney who represented Patrick in the Du Page lawsuit against Amcast. The affidavit averred that even though property damage is mentioned in the Du Page complaint, damages were only recovered for Patrick's personal injuries and the damage to Patrick's eyeglasses. The affidavit disavowed any recovery for or litigation of the damage to Patrick's vehicle. The Du Page litigation was resolved through arbitration and Patrick was awarded $11,090.

In the instant case, the trial court granted Amcast's motion to dismiss on June 8, 1999. Zurich then made a motion to reconsider on July 7, 1999. In its response to this motion, Amcast included the complaint from the Du Page litigation and noted that the complaint in the Du Page lawsuit states that, "as a direct and proximate result of one or more of the forgoing negligent acts or omissions, plaintiff's semitractor was damaged so that it was costly to repair." Zurich's motion to reconsider was denied on September 2, 1999. This appeal followed.

■ ■ "A section 2—619 motion to dismiss affords a defendant a means of obtaining a summary disposition when the plaintiff's claim can be defeated as a matter of law or on the basis of easily proved issues of fact." *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 680, 734 N.E.2d 144, 150 (2000). "A section 2—619 motion to dismiss admits all well-pleaded facts in the complaint" and "[a]ll documents submitted in support of the motion must be considered in a light most favorable to the nonmoving party." *Ericksen v. Rush-Presbyterian-St. Luke's Medical Center*, 289 Ill. App. 3d 159, 165, 682 N.E.2d 79, 83 (1997). "If a cause of action is dismissed pursuant to a section 2—619 motion, the questions on appeal are (1) whether a genuine issue of material fact exists and (2) whether the defendant is entitled to a judgment as a matter of law." *McGee*, 315 Ill. App. 3d at 680, 734 N.E.2d at 150. "A reviewing court exercises *de novo* review of orders granting motions to dismiss." *Ericksen*, 289 Ill. App. 3d at 165, 682 N.E.2d at 83.

Plaintiff argues that the trial court incorrectly applied the doctrine of *res judicata* in barring its claim. In support, plaintiff contends that *res judicata* should not apply here because the Du Page lawsuit involved a different cause of action than the instant suit, which the trial court found to be barred by *res judicata*. We find that the instant litigation is not barred.

■ *Res judicata* will not apply where the prior litigation involved a different cause of action than the litigation that the party invoking *res judicata* intends to terminate. *Joseph T. Ryerson & Son, Inc. v. Manulife Real Estate Co.*, 238 Ill. App. 3d 550, 553, 606 N.E.2d 463, 465 (1992) ("To establish *res judicata* a party must show *** (3) that the former adjudication involved the same cause of action and the same subject matter as the current case").

■ In Illinois the test for what constitutes a cause of action under the doctrine of *res judicata* has undergone a major shift over time. Although not cited by either of the parties, until very recently, our supreme court's decision in *Clancey v. McBride*, 338 Ill. 35, 169 N.E. 729 (1929), controlled the question as to whether a claim for personal injury would bar a subsequent action for property damage that arose

out of the same incident or vice-versa. The test applied in *Clancey* is consistent with the traditional "same evidence" test as originally advocated in the first Restatement of Judgments. Restatement of Judgments § 61 (1942) (where a judgment is rendered, "the plaintiff is precluded from subsequently maintaining a second action based on the same transaction, *if the evidence needed to sustain the second action would have sustained the first action*" (emphasis added)).

In *Clancey* the plaintiff sued the defendant for damage her automobile sustained in an accident due to the defendant's negligence. She recovered $275 and subsequently initiated a second lawsuit against the same defendant for personal injuries which she sustained in the same accident. The defendant argued that her second suit was barred by *res judicata*. Our supreme court held:

"A single negligent act from which personal injury and property damage ensue simultaneously, does not necessarily make its consequences inseparable or result in a single grievance. \*\*\* If \*\*\* as the result of such an act, the owner is injured and his vehicle is damaged, two separate and distinct wrongs are inflicted upon him for two of his rights, first, the right to the uninterrupted enjoyment of his body and limbs, and second, the right to have his property kept free from damage, are invaded. While both wrongs result from a single tortious act, yet the consequences of that act, it seems, give rise to a distinct cause of action for the vindication of each of the violated rights." *Clancey*, 338 Ill. at 38-39, 169 N.E. at 730.

The *Clancey* court reasoned:

"The gist of the action is the harm to person or property negligently perpetrated. To support such an action there must be not only the negligent act, but also a consequential injury or damage which is the gravamen of the charge. It follows that the mere negligent driving of his automobile by the defendant in error, not followed by injury to the person of the plaintiff in error or damage to her automobile, would not have subjected the former to an action for damages by the latter." *Clancey*, 338 Ill. at 38, 169 N.E. at 730.

The *res judicata* analysis in *Clancey* with respect to the interrelationship between property damage and personal injury recovery was followed and applied by our court in the 1975 case of *Stephan v. Yellow Cab Co.*, 30 Ill. App. 3d 996, 998, 333 N.E.2d 223, 224 (1975). There the insurer-subrogee's property damage claim against defendant Yellow Cab was dismissed because of the prior dismissal on the merits of a personal injury claim by the insured-subrogor against Yellow Cab which arose out of the same incident. *Stephan*, 30 Ill. App. 3d at 997, 333 N.E.2d at 224. Citing *Clancey* as controlling, the court held that the insurer-subrogee's property damage claim was a distinct cause of action from the insured-subrogor's personal injury claim and

that the property damage claim was thus not barred by *res judicata*. *Stephan*, 30 Ill. App. 3d at 998-99, 333 N.E.2d at 225.

However, in the more recent decision of the Fifth District of the Illinois Appellate Court in *Mason v. Parker*, 295 Ill. App. 3d 1096, 1098-99, 695 N.E.2d 70, 72 (1998), *appeal denied*, 179 Ill. 2d 587, 705 N.E.2d 439 (1998), the majority held that under our supreme court's decision in *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 665 N.E.2d 1199 (1996), the holding of *Clancey* has been implicitly overruled. But see *Mason*, 295 Ill. App. 3d at 1099, 695 N.E.2d at 72 (Chapman, J., dissenting). We agree with the position of the majority in *Mason*.

In *Rein* our supreme court appears to have moved from a position similar to the more traditional same evidence test (see Restatement of Judgments § 61 (1942) (discussed above)), to a position which is closer to the more modern same transaction test (see Restatement (Second) of Judgments § 24, at 196 (1980) (where a claim is extinguished due to a prior lawsuit "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction *** out of which the action arose")).

■ This transition was brought into sharper focus in the very recent decision of our supreme court in *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 703 N.E.2d 883 (1998), in which the court definitively opted for the supremacy of the same transaction test over the same evidence test. The court stated that "the same evidence test is not determinative of identity of cause of action. Instead, pursuant to the transactional analysis, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 184 Ill. 2d at 311, 703 N.E.2d at 893. Thus *River Park*, even more than *Rein*, vindicates the position taken by the majority in *Mason*.

■ Nevertheless, the *Clancey* analysis still retains a dispositive foothold in the context of subrogation actions pursuant to section 2—403(d) of the Code of Civil Procedure. 735 ILCS 5/2—403(d) (West 1998). Section 2—403(d) states as follows:

"A judgment in an action brought and conducted by a subrogee by virtue of the subrogation provision of any contract or by virtue of any subrogation by operation of law, whether in the name of the subrogor or otherwise, is not a bar or a determination on the merits of the case or any aspect thereof in an action by the subrogor to recover upon any *other cause of action arising out of the same transaction or series of transactions*." (Emphasis added.) 735 ILCS 5/2—403(d) (West 1998).

There is no question that section 2—403(d) is designed to protect an

insured from having a claim for personal injury barred by *res judicata* because his subrogated insurance carrier has previously litigated the issue of property damage arising out of the same accident. The discussion of this question in A. Jenner & P. Tone, *Pleading, Parties & Trial Practice*, 50 Nw. U. L. Rev. 612, 612-13 (1956), is on point, stating:

> "The principle of collateral estoppel upon which such a result is predicated is that a determination of a material fact in the first action between the same parties is binding with respect to the same fact in a second action between them. However, the Joint Committee felt that the reasoning which underlies this principle does not apply when the prior litigation is not controlled by the party sought to be bound in the subsequent suit. Recognizing that removal of the estoppel in cases of this kind would have the undesirable effect of requiring the opposite party to litigate the same issue or issues a second time, the Committee nevertheless thought that this factor was overbalanced by considerations of fairness to the subrogor who had not had his day in court in the first action."

Thus, under the provisions of section 2—403(d), notwithstanding the clearly enunciated shift by our supreme court from the same evidence test to the same transaction test, we would still draw the line in subrogation cases not to preclude an insurer-subrogor from seeking recovery against a tortfeasor for property damage. Moreover, we find further support in the reasoning of several foreign jurisdictions which otherwise adhere to the rule in *Mason* (that property damage and personal injury arising out of the same accident constitute only one cause of action) but carve out an exception to the application of *res judicata* for subrogation cases. For example, the Florida District Court of Appeal has held that "[a]n insurance carrier subrogated to the property claims of its insured may bring a suit for property damages sustained by its insured without regard to a prior lawsuit brought by the insured for personal injuries arising out of the same tort incident." *McKibben v. Zamora*, 358 So. 2d 866, 868 (Fla. App. 1978); accord *Edelman v. Kolker*, 194 So. 2d 683, 684 (Fla. App. 1967); *Travelers Indemnity Co. v. Moore*, 304 Ky. 456, 462-63, 201 S.W.2d 7, 11 (1947); *General Exchange Insurance Corp. v. Young*, 357 Mo. 1099, 1106-07, 212 S.W.2d 396, 400-01 (1948); *Hoosier Casualty Co. v. Davis*, 172 Ohio St. 5, 9-10, 173 N.E.2d 349, 352 (1961); *Nationwide Insurance Co. v. Steigerwalt*, 21 Ohio St. 2d 87, 89-90, 255 N.E.2d 570, 571-72 (1970); *cf. Smith v. Hutchins*, 93 Nev. 431, 433, 566 P.2d 1136, 1137 (1977); *Lemieux v. American Universal Insurance Co.*, 116 R.I. 685, 695-96, 360 A.2d 540, 545 (1976).

We find the reasoning for this exception, espoused by the court in *McKibben* to be persuasive:

"The policy reason behind this insurance subrogation exception is to facilitate the prompt settlement of property damage claims by an insured as against his own insurance carrier without prejudicing either the insured's right to sue the tortfeasor for personal injuries or the insurance carrier's right to bring a subrogated property claim against the same tortfeasor. A contrary rule would discourage such settlements by requiring the plaintiff insured to bring all of his claims together in a single lawsuit and not settle his property damage claim with his own carrier as soon as possible." *McKibben*, 358 So. 2d at 868.

Additionally, we note the reasoning of the Supreme Court of Missouri, which stated in *General Exchange*:

"[I]f the insurer either pays the insured his entire property loss or pays him a less sum and receives an assignment for the whole claim, as was done in this case, the insured has no further interest in property damages. Under those circumstances the insurer is the real party, and the only party, interested in collecting property damages and should be permitted to sue therefore in its own name. Thus two separate causes of action may arise from the same occurrence." *General Exchange*, 357 Mo. at 1107, 212 S.W.2d at 401.

We believe that this analysis should not change even in light of plaintiff's concession in its affidavit that there was recovery by the insured for the damage to his eyeglasses[1] in addition to his personal injuries, even though the damage to the eyeglasses constitutes property damage. *Phillips v. Garden*, 211 So. 2d 735, 740 (La. App. 1968) (damage to eyeglasses property damage, not personal injury). As previously pointed out, the affidavit is uncontested in its assertion that, notwithstanding the inclusion of a claim for property damage in the complaint, the property damage to the insured's vehicle to which the insurer was subrogated was neither litigated nor recovered for. *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority*, 77 Ill. App. 3d 495, 507, 396 N.E.2d 34, 43 (1979) ("Where [in a section 2—619 motion] facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary unsupported allegations in the adverse party's pleadings"). Although a nominal claim for property damage was made in the pleadings, there was no attempt to litigate or recover for the damage to the vehicle.

Thus the right of a subrogee to recover on its subrogated claim for

---

[1]We note that there is no indication from any of the parties that the insurer was subrogated to the recovery for the damage to the insured's eyeglasses. We further note that neither party has raised any issue regarding the recovery for the damage to the insured's eyeglasses.

vehicle damages should not be impacted by the limited property damage recovery by the insured subrogor for his eyeglasses. Significantly, this was the position taken by the *General Exchange* court, where the insurance company pursued the bulk of the property damage claim but the insured sued the tortfeasor for a portion of the property damage. The court stated:

> "Mrs. Swisher [the insured] assigned to respondent insurance company her entire claim for property damages although, as her policy provided, she received less than her full claim by $25.00. This assignment would have prevented Mrs. Swisher from splitting her cause of action by suing defendant Young [tortfeasor] for the $25.00 which she failed to receive from the insurance company, but it did not constitute a split of the action for property damages so far as respondent insurance company was concerned." *General Exchange*, 357 Mo. at 1106, 212 S.W.2d at 400.

Along with *General Exchange*, other jurisdictions have specifically recognized that the recovery by a subrogor for part of the property damage in the subrogor's lawsuit will not preclude the subrogated insurance company from recovering for the subrogated remaining portion of the property damage in a separate lawsuit. *Fidelity & Guaranty Fire Corp. v. Silver Fleet Motor Express, Inc.*, 242 Ala. 559, 561, 7 So. 2d 290, 292 (1942); *Sodak Distributing Co. v. Wayne*, 77 S.D. 496, 501, 93 N.W.2d 791, 794 (1958).

We find particularly persuasive the reasoning of the Supreme Court of Alabama in *Silver Fleet*. The facts in *Silver Fleet* were that an uninsured truck and its insured cargo were both damaged in an accident with another vehicle. After the truck's owner recovered from the tortfeasor for the damage to the truck, the tortfeasor argued that the subrogated insurer's subsequent lawsuit for the damage to the cargo was *res judicata*. The court reasoned that if "the cargo had belonged to a third person, no one would question his right to sue separately, notwithstanding a multiplicity of suits involving the same evidence touching the circumstances of the collision." *Silver Fleet*, 242 Ala. at 561, 7 So. 2d at 292. The court also reasoned:

> "Aside from public wrongs, an act is not wrongful because of injury to things, it is wrongful because hurtful to another, and becomes an actionable tort because it has done injury to the personal or property right of another. Potentially, the insurer had an interest in the cargo, as against a tort-feasor, when the injury occurred. Basically every one should have his day in court in fact, not merely by a nominal party not interested in protecting his interest." *Silver Fleet*, 242 Ala. at 561, 7 So. 2d at 292.

Thus, notwithstanding the categorical adoption of the same transaction test by our supreme court in *River Park* and notwithstanding the

apparent recovery for the relatively limited property damage claim for damage to the insured's eyeglasses, the right of the subrogee in this case would nevertheless be preserved to pursue its subrogation rights in a separate action.

We further note that none of the forgoing cases appear to require notice as a precondition to recovery. See *McKibben*, 358 So. 2d 866; *Edelman*, 194 So. 2d at 683; *Travelers Indemnity*, 304 Ky. 456, 201 S.W.2d 7; *Hoosier Casualty*, 172 Ohio St. 5, 173 N.E.2d 349; *Nationwide Insurance*, 21 Ohio St. 2d 87, 255 N.E.2d 570; *Smith*, 93 Nev. 431, 566 P.2d 1136; *Lemieux*, 116 R.I. 685, 360 A.2d 540; *General Exchange*, 357 Mo. 1099, 212 S.W.2d 396. While such is not necessarily the case in *Home Insurance Co. v. Hertz Corp.*, 71 Ill. 2d 210, 375 N.E.2d 115 (1978), we must be mindful that *Home Insurance* deals with releases pursuant to a settlement where the tortfeasor volitionally pays to settle a claim. *Home Insurance Co. v. Hertz Corp.*, 71 Ill. 2d at 211, 375 N.E.2d at 116. Under such circumstances, the tortfeasor requires the protection of notice against the possibility of being required to pay twice for the same damage. Where, however, a case goes to judgment such protection is unnecessary where, as is the case here, it is clear from the undisputed affidavit that the judgment does not encompass the damages sought by the subrogee. See, *e.g.*, *McKibben*, 358 So. 2d 866; *Edelman*, 194 So. 2d at 683; *Travelers Indemnity*, 304 Ky. 456, 201 S.W.2d 7; *Hoosier Casualty*, 172 Ohio St. 5, 173 N.E.2d 349; *Nationwide Insurance*, 21 Ohio St. 2d 87, 255 N.E.2d 570.

For the reasons discussed above, the judgment of the circuit court of Cook County dismissing plaintiff's suit as *res judicata* is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

CAHILL, P.J., and McBRIDE, J., concur.