DA 14-0150

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 254

IN RE THE ESTATE OF:
LAURA JEAN KELLY, Deceased.

ANNE-MARIE READER,

      Appellant,

   v.

KEVIN A. KELLY and LISA K. MILLER,

      Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DP-13-200
                 Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                André Gurr, Terrazas Law Offices, Missoula, Montana

        For Appellees:

                David J. Steele, II, Geiszler & Froines, PC, Missoula, Montana

                                  Submitted on Briefs:  August 13, 2014
                                        Decided:  September 23, 2014

Filed:

                    _____
                                Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      This is an appeal from the decision of the Fourth Judicial District Court, Missoula County, pertaining to the distribution of Laura Jean Kelly's assets under her Montana Last Will and Testament.

¶2      Laura was the daughter of Kevin D. and Asta Kelly, and the sister of Kevin A. Kelly, Lisa Kelly Miller, and Linda Koss Kelly. Laura had a history of mental illness and was treated with medication. She neither married nor had children. In 1985, Laura moved away from the Illinois family home and re-located to Montana. She executed her Last Will and Testament in Montana in June 2013. In her Will, she made multiple specific pre-residuary devises. She also devised 65% of her residuary estate to specific nieces and nephews, including her niece, appellant Anne-Marie Reader. The remaining 35% of her residuary estate was devised to a close friend. Laura died on September 25, 2013, at age 62. Siblings Kevin A. and Lisa petitioned the District Court for a determination that Laura's interest in a family partnership was not part of her residuary estate. The District Court agreed. Anne-Marie appeals.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      In December 2001, Kevin D. and Asta Kelly and their four children, Kevin A., Lisa, Linda, and Laura, executed the Kelly Family Limited Partnership Agreement (FLPA). This family partnership was formed under the Illinois Revised Uniform Limited Partnership Act of 1986. Under the terms of the FLPA, Kevin D. and Asta were general partners, each

_____

[1] At the time this appeal was initiated, Linda Koss Kelly and her daughter, Anne-Marie Reader, were appellants. Linda subsequently withdrew as an appellant.

holding 1% interest in the partnership along with management control, and the four children were limited partners, each owning a 24.5% interest in the partnership. The partnership's assets were extensive farmland located in both LaSalle and Hancock counties in Illinois.

¶4    Kevin D. and Asta held a family meeting in mid-December 2001, which was attended by Kevin A., Linda, Laura, and attorney Robert Vilt, who assisted in drafting the agreement for the Kellys. Lisa was unable to attend but was kept apprised by telephone. During the meeting Kevin D. explained the purpose and terms of the partnership agreement. The FLPA was signed by all family members within days of the family meeting. Lisa and Kevin A. both assert that Kevin D. indicated at the meeting that upon Laura's death, her partnership interest would pass to her surviving siblings,[2] and upon the death of the other siblings, their partnership interests would pass to their children.

¶5    In October 2003, Kevin D. died and his 1% interest in the FLPA passed to Asta, who died in February 2011. At that time, Asta's 2% interest in the partnership was divided equally among her four children.

¶6    As noted above, Laura died in September 2013. Laura's Will made no mention of the FLPA or her interest therein. Under the residuary clause of her Will, Laura devised 65% of her residuary estate to Anne-Marie Reader, Anne-Marie's children, Nicholas and Amanda, ages 16 and 13 respectively, and Anne-Marie's half-brother, Morgan Koss, age 8. Anne-Marie assumed that Laura's 25% interest in the FLPA was part of Laura's residuary estate,

<hr>

[2] Laura was 50 years old and childless at the time the partnership agreement was executed, and it was presumed she would not have children.

3

and that 65% of Laura's interest in the FLPA would therefore be distributed to her and the three minor children.

¶7     Kevin A. and Lisa disagreed with Anne-Marie and petitioned the District Court for a determination of the proper distribution of Laura's partnership interest in the FLPA. Kevin A. and Lisa argued that, pursuant to the express wishes of Kevin D., it was intended that Laura's interest in the partnership would, upon her death, pass to her siblings. They also maintained that the fact that Laura's very detailed Will did not reference her partnership interest reflected her understanding that her partnership interest would not pass under her Will to her named heirs, but rather would pass to her siblings.

¶8     As urged by Linda and Anne-Marie, the court concluded that the FLPA was controlled by Illinois law. It then determined that Section 7.2 of the agreement expressly provided the manner in which Laura's interest in the partnership would pass to her "heirs" upon her death. Based upon the court's interpretation of the language in Section 7.2, the court concluded that the FLPA created a future interest in Laura's heirs in the family partnership and that the FLPA was a "governing instrument" under § 72-2-721, MCA, of the Montana Uniform Probate Code. Pursuant to § 72-2-721, MCA, the court held that Laura's interest in the family partnership must pass in accordance with the laws of intestacy and not under her Will; therefore, it was a non-probate asset and did not constitute part of the residue of Laura's estate. As such, on her death, Laura's partnership interest passed to her "heirs-at-law," i.e., to Kevin A., Lisa and Linda. Anne-Marie filed a timely appeal.

4

**ISSUE**

¶9      A restatement of the issue on appeal is:

¶10     Did the District Court err in ruling that Laura's partnership interest must pass to her surviving siblings in accordance with the Montana Uniform Probate Code?

**STANDARD OF REVIEW**

¶11     We review a district court's findings of fact to ascertain whether they are clearly erroneous.  A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law for correctness.  *In re Estate of Hannum*, 2012 MT 171, ¶ 19, 366 Mont. 1, 285 P.3d 463 (internal citation omitted).

**DISCUSSION**

¶12     *Did the District Court err in ruling that Laura's partnership interest must pass to her surviving siblings in accordance with the Montana Uniform Probate Code?*

¶13     We are called upon to determine whether Laura's interest in the family partnership must pass to her siblings as her heirs-at-law or to her nieces and nephews as testamentary heirs under her Will.  We first look to the section of the FLPA that addresses the death of a Limited Partner.  Section 7.2 of the FLPA provides:

> The Partnership shall not terminate and dissolve upon the death, legal incapacity or termination of a Limited Partner.
>
> The respective heirs of any deceased Limited Partner shall have the right to become a substitute Limited Partner by executing an amendment to this Partnership Agreement and, as provided by law, agreeing to be bound by all of the terms and conditions hereof and to assume all of the obligations of the deceased Limited Partner provided such respective heirs are the lineal

5

descendants of KEVIN DONAL KELLY and ASTA WIDLUND KELLY.

> If the respective heirs of any deceased Limited Partner are not lineal descendants of KEVIN DONAL KELLY AND ASTA WIDLUND KELLY, then the deceased Limited Partner's interest shall automatically revert to the remaining Limited Partners and shall be transferred to said remaining Limited Partners by the legal representative of the deceased Limited Partner as soon as practicable.

> If the respective heirs of the deceased Limited Partner are the lineal descendant but do not desire to become a Limited Partner, then the respective heirs of the deceased Limited Partner may offer to sell the interest of the deceased Limited Partner to the remaining Limited Partners on a pro rata basis. . . .

¶14    "Lineal descendants" as defined in the FLPA includes Kevin D. and Asta's children, grandchildren, great grandchildren, great great grandchildren, and great great great grandchildren.  Kevin D. and Asta's children understood that the requirement limiting partnership to lineal descendants precluded their spouses from owning any interest in the assets of the partnership.

¶15    Anne-Marie takes issue with the District Court's interpretation of the meaning of "heirs" as used in Section 7.2 of the FLPA.  She asserts that the FLPA is a contract and under Illinois law, "heirs" should be interpreted broadly to include not only heirs-at-law but also testamentary heirs.  She argues that the District Court erred when it concluded that the term "heirs" as used in the FLPA had a restricted meaning limited to "heirs-at-law."  She also complains that the court erred when it relied upon and applied § 72-2-721, MCA.  She maintains that because Illinois law has no counterpart to § 72-2-721, MCA, it was error to apply the Montana statute to a document created and controlled by the Illinois Uniform Limited Partnership Act.

¶16    Kevin A. and Lisa counter that the FLPA is both a contract and a "governing instrument" under Illinois and Montana law.  They rely on 805 ILCS[3] 215/110(a) and § 35-12-515(1), MCA, which employ the following identical language:  "[T]he partnership agreement *governs* relations among the partners and between the partners and the partnership."  (Emphasis added.)  Kevin A. and Lisa claim that after the District Court determined that the FLPA was a "governing instrument" under both Montana and Illinois law, it was appropriate for the court to turn to the Montana Uniform Probate Code to determine the effect of "a governing instrument" upon probate assets in Montana.

¶17    Section 72-2-721, MCA, of the Montana Uniform Probate Code, provides in relevant part:

> If . . . a governing instrument calls for a present or future distribution to or creates a present or future interest in a designated individual's "heirs" . . . the property passes to those persons . . . and in such shares as would succeed to the designated individual's intestate estate under the intestate succession law of the designated individual's domicile in effect at the time the disposition is to take effect in possession or enjoyment as if the designated individual died at that time. . . .

"Governing instrument" is defined as "a deed; will; trust; insurance or annuity policy; account with POD designation; security registered in beneficiary form (TOD); pension, profit-sharing, retirement, or similar benefit plan; instrument creating or exercising a power of appointment or a power of attorney; or dispositive, appointive, or nominative instrument of any similar type."  Section 72-1-103(20), MCA.  Kevin A. and Lisa assert that because Section 7.2 of the FLPA expressly creates a future interest in Laura's heirs in the family partnership, it constitutes a "governing instrument" under Montana law.

---

[3] Illinois Compiled Statutes Annotated.

¶18    Kevin A. and Lisa further argue that the term "heirs" as used in the FLPA means "heirs-at-law" under the applicable law of both Illinois and Montana. An "heir-at-law" is defined as "Someone who, under the laws of intestacy, is entitled to receive an intestate decedent's property." *Black's Law Dictionary* 839 (Bryan A. Garner ed., 10th ed. 2014). They maintain that the meaning of "heirs" under the FLPA includes only heirs-at-law and not testamentary heirs. Consequently, Laura's heirs-at-law are her remaining siblings, Kevin A., Lisa, and Linda.

¶19    The parties agree the court correctly ruled that the FLPA is controlled by Illinois law. This, however, does not preclude application of the Montana Uniform Probate Code to the probate of Laura's Will. The District Court looked to the FLPA for guidance on the appropriate distribution of Laura's partnership interest. The FLPA clearly establishes that upon Laura's death, her "heirs" are entitled to become limited partners in the Kelly family partnership. Because the FLPA grants a future interest in the family partnership to Laura's heirs, it constitutes a "governing instrument" under both Illinois law and the provisions of the Montana Uniform Probate Code. *See* 805 ILCS 215/110(a). Section 72-2-721, MCA, unequivocally requires that Laura's partnership interest must pass to her heirs in the manner it would if she had died intestate. Intestate succession, in this case, would cause Laura's partnership interest to pass to Kevin A., Lisa, and Linda.

¶20    Anne-Marie urges us to apply Illinois case law to Laura's probate proceeding. She asserts that under Illinois law, when the word "heirs" is used in a non-transfer clause, it is governed by "its ordinary and popular meaning which includes heirs-at-law as well as testamentary heirs." She argues that Laura unequivocally indicated in her Will that she did

8

not wish any of her property go to Kevin A. and we should honor that wish by interpreting "heirs" to mean the testamentary heirs named in Laura's Will. While we acknowledge the existence of a line of cases in Illinois that embraces a broad definition of "heirs" to include testamentary heirs, we also recognize the line of cases holding that "'heirs' is a technical word having a definite legal signification, and when unexplained and uncontrolled by the context, must be interpreted, according to its technical import, as designating the person appointed by law to succeed to the real estate in case of intestacy." *Aetna Life Ins. Co. v. Hoppin*, 94 N.E. 669, 671 (1911). *See also Noll v. Garber*, 784 N.E.2d 388 (Ill. App. Ct. 2003).[4]

¶21 As noted, the application of Illinois Partnership law to the FLPA itself does not require the court to ignore Montana probate law, which governs the affairs and estates of decedents of this state. Section 72-1-201(1), MCA. Presuming the FLPA to be a "governing instrument" under both Montana and Illinois law, its designation of "heirs" properly refers to those designated under the intestate succession law of the state of her demise, Montana. Because Laura died while domiciled in Montana, Montana probate law applies. Under the Montana laws of intestate succession, where a decedent dies with no surviving spouse or descendants, then her property will pass to the descendants of her parents by representation. Section 72-2-113, MCA. Notwithstanding the fact that Laura had a will, the status of the FLPA as a "governing instrument" under Montana probate law dictates that Laura's interest

---

[4] We note that Kevin D. practiced law in Illinois for several decades prior to the time the FLPA was drafted and executed and he did not include any additional language in the partnership agreement that would indicate that he intended that "heirs" be interpreted in any manner other than as "heirs-at-law".

in the family partnership passes under the intestate succession law of Montana. We conclude the District Court did not err in ruling that the FLPA was a governing instrument requiring application of the laws of intestate succession to Laura's partnership interest.

¶22 Anne-Marie also posits an estoppel argument. She argues that shortly after Laura's death and before Kevin A. consulted an attorney, Kevin A. acknowledged in writing that Anne-Marie and the minor beneficiaries under Laura's Will would inherit Laura's partnership interest, and that he would not object to Laura's Will based upon the partnership interest passing under the Will. We need not address this argument other than to note that the facts in the record do not support her claim of promissory estoppel, and the communication Anne-Marie references as establishing such a promise does not constitute a release of any right to have the FLPA interpreted properly by the District Court.

¶23 Lastly, and in the alternative, Anne-Marie maintains that because this case presents a question of first impression concerning the governing law of Illinois, this Court should certify this question to the Illinois Supreme Court. Having determined that Laura's Will must be probated in accordance with the Montana Uniform Probate Code, there is no need to certify any legal questions to the Illinois Supreme Court.

**CONCLUSION**

¶24 For the foregoing reasons, we affirm the District Court's interpretation of the term "heirs," its application of Montana law, and its conclusions of law.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE